# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF JESUS MANZO ET. AL., <br><br>　　　　　　　　　Plaintiff, <br>vs. <br>COUNTY OF SAN DIEGO, ET. AL., <br><br>　　　　　　　　　Defendants. | CASE NO. 06CV0060 BTM (WMC) <br><br> ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT |

On August 1, 2005, Jesus Manzo ("Manzo") was shot and killed by sheriff's deputy Lewis Schott during a police chase. Plaintiffs, the estate of Manzo, Maria Maldinado, and Anahi Manzo, have brought suit against Defendants County of San Diego, Captain Robert Ahern, and Deputy Lewis Schott alleging claims for violation of constitutional rights, excessive force, wrongful death, municipal liability, supervisory liability, battery and negligence. The claims on behalf of the estate of Manzo are brought by Maria Nancy Manzo, the deceased's sister and alleged personal representative of the estate.

Defendants have moved for summary judgment on Plaintiffs' claims on several grounds. For the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Defendants' motion for summary judgment.

**A.    Standing To Bring Claims on Behalf of the Estate of Manzo**

Survival actions pursuant to § 1983 are permitted if authorized by the applicable state law. Moreland v. Las Vegas Metropolitan Police Dept, 159 F.3d 365, 369-370 (9th Cir. 1998).

"A cause of action that survives the death of the person entitled to commence an action or proceeding passes to the decedent's successor in interest, subject to [provisions] of the Probate Code, and an action may be commenced by the decedent's personal representative or, if none, by the decedent's successor in interest." Code Cal. Civ. Proc.§ 377.30.  Where there is no acting personal representative of a decedent because there has been no probate, or probate is no longer pending, the decedent's successor in interest is authorized to enforce a surviving cause of action. (4 Witkin, Cal. Procedure, supra, Pleadings, § 115, p. 175.) "Successor in interest" means the "beneficiary of the decedent's estate or other successor in interest who succeeds to a cause of action or a particular item of property that is the subject of a cause of action." Code Cal. Civ. Proc. § 377.11.  Successors in interest are required to file an affidavit containing certain enumerated information set forth in § 377.32.

Here, Plaintiffs have introduced no evidence that Maria Nancy Manzo is either the personal representative of or successor in interest to Jesus Manzo under California law. Although Maria Nancy Manzo has filed the affidavit required under § 377.32, the affidavit itself does not qualify a person as a successor in interest. The parties are therefore ordered to show cause why the claims brought by the estate of Manzo, as represented by Maria Nancy Manzo, should not be dismissed for lack of standing.[1]  Plaintiffs shall provide a written response to this order to show cause within two weeks of the date of this order.  Defendants shall provide a reply to Plaintiffs' response within one week of the filing of Plaintiffs' response.

**B.      Wrongful Death Causes of Action**

Plaintiffs Anahi Manzo and Maria Maldinado, in their second cause of action, allege a wrongful death claim against Deputy Schott pursuant to § 1983. Deputy Schott argues that he is entitled to summary judgment on the wrongful death claim on the grounds that his use

---

[1] The estate of Manzo is the only Plaintiff to allege the third cause of action for excessive force, the seventh cause of action for battery, and the eighth cause of action for negligence. The Court therefore does not resolve the motion for summary judgment as to those causes of action at this time.

of force against Jesus Manzo was reasonable and protected by qualified immunity.

Under the Fourth Amendment, police officers may use force to the extent that it is objectively reasonable under the circumstances. <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989). An officer's use of deadly force is reasonable only if "the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." <u>Tennessee v. Garner</u>, 471 U.S. 1,3 (1985). A determination regarding whether unreasonable force was used "must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." <u>Graham</u>, 490 U.S. at 396-97. "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." <u>Saucier v. Katz</u>, 533 U.S. 194, 205 (2001).

Qualified immunity provides a "further dimension" of protection. <u>Id.</u> Government officials performing discretionary functions are shielded from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. . . . If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." <u>Saucier v. Katz</u>, 533 U.S. 194, 203 (2001) "[Q]ualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." <u>See</u> <u>Valley v. Briggs</u>, 475 U.S. 335, 341 (1986). The Court must determine, after resolving all factual disputes in favor of the plaintiff, whether the officer's use of deadly force was unreasonable and clearly unlawful under the circumstances.

Here, the Court has been presented with testimony setting forth two dramatically different versions of the critical events surrounding the death of Manzo. Deputy Schott testified that Manzo, while evading arrest by officers, jumped onto a fence between two

homes located at 840 Newport Drive and 844 Newport Drive. (Schott Decl. ¶ 9) Deputy Schott ran up the driveway of 844 Newport Drive to head off Manzo on the east side of the fence while Deputy Dinger and his police dog approached Manzo from the west side of the fence. (Id.) Both officers then attempted to force Manzo off the fence. (Id.) Deputy Dinger's dog attempted to bite Manzo while Deputy Schott struck him on the legs with a Sap. (Schott Decl. ¶ 9, 10) While Manzo was on the fence, Deputy Schott saw what he believed to be a gun sticking out of Manzo's waistband. (Schott Decl. ¶ 10) Deputy Schott then cried out "Gun, Gun, Gun!" and started to move back and draw his own gun. (Id.) Manzo jumped down off the fence in the direction of Deputy Schott and refused to get down on the ground despite Deputy Schott's commands. (Id.) Manzo then reached into his waist in the location where Deputy Manzo had spotted what he believed to be a gun. (Id.) Believing that Manzo was reaching for his gun, Deputy Schott fired his handgun and shot Manzo. (Id.)

Felix Simental, the resident of 844 Newport Drive where the shooting took place, testified to a completely different version of events. Mr. Simental arrived at his house as the police chase was occurring. (Simental Depo.at 40-41) He parked his car at the bottom of the driveway, and witnessed the following events. (Id.) Manzo jumped over the three foot corral fence from 840 Newport Drive to 844 Newport Drive. (Simental Depo.at 46, 51) He ran toward Mr. Simental's front door and attempted to open the door. (Simental Depo.at 51-52) After he failed to open the door, he ran back toward the fence to the side of the house. (Simental Depo.at 54 ) Manzo then attempted to get into Mr. Simental's backyard through the garage.(Simental Depo.at 66-67) Because the garage was locked, Manzo turned around and proceed to run along the fence toward the street. (Id.) As Manzo was running toward the street he turned and looked at the officers to his left. (Simental Depo.at 66-70) He stopped, faced the officers and put out his hands as if to surrender. (Simental Depo.55-56,60-62, 66-71) One of the officers standing near Simental's door then shot

//

//

Manzo.[2] (Id.) Simental later witnessed the officers "celebrating" by congratulating one another on the "nice shot" and making statements such as "Hey, man, you got him, you finally got him" and "Did you see that skinny little sucker run?" (Simental Depo. at 80, 90)

Upon resolving these disputed facts in favor of Plaintiff, the Court cannot conclude that Deputy Schott's actions were reasonable and justified under the circumstances. If Simental's version is accepted as true, then Deputy Schott shot Manzo while Manzo was stopped facing the officers with his hands up in the air. In this scenario, Deputy Schott could not reasonably have perceived that Manzo posed a significant threat of death or serious physical injury. Even accounting for the tense, uncertain situation of a police chase with a possibly armed suspect, the Court finds that Deputy Schott did not act reasonably if he shot Manzo while he was stopped and facing the officers with his hands in the air. The Court therefore concludes that Plaintiffs have raised a dispute of material fact regarding the reasonableness of Deputy Schott's actions.

Moreover, the Court concludes that the dispute of facts surrounding the shooting of Manzo precludes summary judgment in Deputy Schott's favor on the ground of qualified immunity. The law clearly prohibits the use of deadly force unless the suspect poses a significant threat of death or serious physical injury to others. See, e.g., Garner, 471 U.S. at 3. Again, if Mr. Simental's version of events is accepted as true, Deputy Schott acted in a clearly unlawful manner by shooting a suspect who was stopped with his hands in the air and, thus, did not pose a serious threat. A reasonable officer would know this would violate the law. The Court therefore DENIES Defendant Deputy Schott's motion for summary judgment on Plaintiffs' second cause of action for wrongful death pursuant to § 1983. For the same reasons, the Court also DENIES summary judgment on Plaintiff Anahi Manzo's sixth

---

[2] Mr. Simental testified that the officer who shot Manzo was standing approximately 20 feet away from Manzo. Defendants submitted an expert opinion by Lance Martini stating that he determined the range from the pistol muzzle to the jacket which Manzo was wearing at the time of the shooting was 12-36 inches. This discrepancy between the expert opinion and Mr. Simental's testimony does not vitiate the remainder of Simental's testimony for the purposes of creating an issue of fact as to whether Manzo posed a threat at the time that he was shot.

cause of action for wrongful death under state law.[3]

## C.    Fourteenth Amendment Right of Association Claim

Plaintiffs Maria Maldinado, the deceased's mother and Anahi Manzo, the deceased's daughter allege in their first cause of action that Deputy Schott's unreasonable use of deadly force deprived Plaintiffs of their constitutional right to the companionship of their family member.  To recover under a Fourteenth Amendment claim, a plaintiff must establish, in addition to unreasonableness, "a purpose to cause harm unrelated to the legitimate object of arrest."  Moreland v. Las Vegas Metropolitan Police Dept., 159 F.3d 365, 372 (9th Cir. 1998).

As set forth above, the Court concludes that there is a dispute of fact regarding whether Deputy Schott's use of force was reasonable.  The Court also concludes that Plaintiffs have also established a dispute of fact as to whether Deputy Schott acted with a purpose to cause harm that was unrelated to legitimate law enforcement interests. According to Mr. Simental's version of events, Deputy Schott purposefully shot Manzo while Manzo was facing the officers with his hands up in the air and then celebrated the killing with his policemen friends.  Based on this version of events, a reasonable juror could find that Deputy Schott  acted with the purpose of causing harm unrelated to legitimate law enforcement motives because shooting Manzo was not necessary to safely apprehend the suspect.  The Court therefore concludes that Plaintiff has established a dispute of material fact with regard to Plaintiffs' Fourteenth Amendment claim.  The Court, therefore, DENIES Defendant's motion for summary judgment with respect to Plaintiffs' first cause of action.

For the same reasons, the Court finds that Plaintiffs have created a triable issue of fact on whether Deputy Schott's actions were motivated by evil intent or reckless or callous indifference to the rights of Manzo.  Again, Mr. Simental's version of events portrays Manzo as stopped with his hands in the air at the time of his shooting and, thus, raises a dispute of

---

[3] Wrongful death claims under California state law are also governed by a similar reasonableness analysis. Martinez v. County of Los Angeles, 47 Cal. App. 4th 334 (1996) ("The test for determining whether a homicide was justifiable under Penal Code section 196 is whether the circumstances "reasonably created] a fear of death or serious bodily harm to the officer or to another.")

material fact as to whether Deputy Schott shot Manzo with evil, or reckless intent.  The Court, therefore, also DENIES Defendants' motion for summary judgment with respect to Plaintiffs' entitlement to punitive damages.

### D.  Monell Liability Against County of San Diego

Plaintiffs allege a fourth cause of action for Monell liability against the County of San Diego on the ground that the county maintained unconstitutional customs, policies or practices which resulted in the death of Jesus Manzo.  Specifically, Plaintiffs allege that the County had the following policies or customs: (1) staffing a predominantly Hispanic neighborhood with non-Hispanic patrol deputies; (2) improperly using the gang injunction to impermissibly stop and detain individuals not on the gang injunction; (3) failing to thoroughly investigate and reprimand officers who used excessive force and excessive deadly force; (4) deliberately failing to train officers in alternatives to the use of deadly force; and (5) generally creating and perpetuating a culture of deliberate indifference to the constitutional rights of citizens to be free of excessive force.

Under Monell v. Department of Social Services, a municipality is liable only when the enforcement of a municipal policy or custom was the moving force behind the violation of federally protected rights.  436 U.S. 658 (1978); see M.A.B.E. v. San Bernardino County, Depot of Pub. Soc. Serve., 237 F.3d 1101, 1110-11 (9th Cir.2001).  An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled [entity] policy." Monell, 436 U.S. at 691.  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy." Thriven v. Gates, 99 F.3d 911, 918 (9th Cir.1996).  The existence of a custom or informal policy, however, may be inferred given evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded. McCreary v. Shimoga, 795 F.2d 780, 784 (9th Cir. 1986); Henry v. County of Shasta, 132 F.3d 512, 518-519 (9th Cir. 1997).

Here, Plaintiffs have not submitted evidence of any written policies or customs.[4] Instead, Plaintiffs apparently ask the Court to infer the existence of unwritten customs or policies as alleged, given the evidence of four incidents in which non-Hispanic Vista deputies used deadly force on suspects with Hispanic surnames. First, on May 15, 2005, Deputy John Spach used deadly force on Ramon Torres. (Ahern Depo.at 30) Second, on July 28, 2005, Deputies John Spach and Shawn Aiken used deadly force on Sergio Vasquez. (Ahern Depo.at 31; Notice of Lodgment dated February 25, 2008). Third, on July 29, 2005, Deputy Mark Ritchie shot and killed Jorge Ramirez. (Ahern Depo.at 30-31) Fourth, on August 1, 2005, Lewis Schott used deadly force on Jesus Manzo.

The Court also finds that the above evidence fails to create an issue of fact as to whether San Diego County has a custom or policy of staffing Hispanic neighborhoods with non-Hispanic officers. The evidence offered by Plaintiffs establishes nothing more than the fact that four officers with non-Hispanic surnames were employed at the Sheriff Department's Vista Patrol Station.

Second, the Court finds that the evidence submitted concerning these four shooting incidents are insufficient to create an inference of persistent and widespread customs of indifference to constitutional rights, failure to train, investigate and discipline, deliberate failure to provide tasers, and improper use of a gang injunction on the part of the municipality. Neither party submitted any further information regarding the first shooting incident involving Ramon Torres. The Court therefore cannot determine whether this incident involved the unreasonable use of deadly force on a Hispanic suspect. Plaintiffs submitted excerpts of investigative reports which narrate (1) Deputy Spach's version of the July 28, 2005 shooting of Sergio Vasquez and (2) Deputy Ritchie's version of the July 29, 2005

---

[4] In fact, Plaintiffs do not oppose the motion for summary judgment on its fourth cause of action against County of San Diego in its Opposition brief. It is unclear whether Plaintiffs' failure to brief this issue is intentional. The Court therefore rules on this issue based on the evidence presented.

shooting of Jorge Ramirez.[5]  (Notice of Lodgment dated February 25, 2008)  The Court has reviewed these accounts narrated by the deputies and has construed the facts submitted in the light most favorable to the Plaintiffs.[6]  Based on the *limited information* presented, the Court is concerned that the shooting of Jorge Ramirez may have involved  unreasonable deadly force.   On the other hand, on the limited information presented, it appears that Deputy Spach's and Deputy Aiken's  the use of deadly force against Sergio Vasquez may well have been reasonable and in response to a serious and deadly  threat posed by Vasquez.  The fourth incident offered by Plaintiffs is the subject of this instant case.  As set forth above, there is a material dispute of fact as to whether Deputy Schott used unreasonable deadly force in violation of Manzo's constitutional rights.

In summation, the Plaintiffs have, at best, submitted evidence that between  May 15, 2005 and prior to August 1, 2005, there was perhaps one incident in which Vista deputies unconstitutionally used deadly force against a Hispanic suspect.  Again, the Court has no information regarding the first shooting and the only evidence provided regarding the second incident involving Sergio Vasquez tends to indicate that the use of force was constitutionally reasonable.   The Court concludes that the evidence of one prior incident involving  a possible constitutional violation suffered by a Hispanic victim is insufficient to infer a county policy of deliberate indifference to constitutional violations or any of the other policies or customs alleged by Plaintiffs that was the moving force of the Manzo shooting. See Meehan v. Los Angeles County, 856 F.2d 102, 107 (9th Cir. 1998) (two incidents not sufficient to establish custom).  Evidence limited to proof of two unconstitutional uses of deadly force within a three-month time-frame (including the present incident) does not provide a broad enough  temporal context  to determine whether these incidents are illustrative of the wrongful use of deadly force used on an ongoing basis.  Moreover, Plaintiffs have provided

---

[5] Plaintiffs have requested that these lodgments be filed under seal because the investigative reports that they contain were produced pursuant to a protective order. The Court acknowledges the confidential nature of internal investigations concerning the use of deadly force by police officers and grants this request.

[6] The Court notes that Plaintiff submitted these investigative reports and did not submit any competing factual accounts of these two shootings.

no evidence that would allow a fact-finder to "put [the number of shootings] in context, by, for example, comparing the number of incidents to that of similar municipalities" which do not harbor the alleged constitutionally infirm practices. See Henderson v. City and County of San Francisco, 2006 WL3507944 at *11 (N.D. Cal. 2006).  Because Plaintiffs have failed to introduce evidence from which a jury can infer a policy of deliberate indifference to constitutional rights or any of the other specific policies alleged, the Court GRANTS Defendant County of San Diego's motion for summary judgment on Plaintiffs' fourth cause of action for Monell liability.[7]

### E.     Supervisory Liability Claim Against Robert Ahern

Plaintiffs also allege that given the previous incidents of deadly force within his Vista unit, Captain Ahern is liable as a supervisor due to his failure to take the following actions: (1) Ahern made no recommendations regarding the use of Tasers or other alternatives to lethal force; (2) Ahern made no recommendations regarding providing additional training to deputies on use of lethal force; and (3) Ahern did not issue any memoranda or bulletin to deputies regarding the appropriate use of deadly force.  Supervisory liability is imposed against a supervising official in his individual capacity for (1) his own culpable action or inaction in the training, supervision, or control of his subordinates; (2) for his acquiescence in constitutional deprivations; or (3) for conduct that shows a reckless or callous indifference to the rights of others.  Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991). Although "[liability can exist without direct participation by the supervisor," Motley v. Parks, 432 F.3d 1072, 1081 (9th Cir. 2005), the Plaintiff must establish causation by showing that the supervisor "set in motion a series of acts by others or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known, would cause others to inflict the constitutional injury." Watkins v. City of Oakland, 145 F.3d 1087, 1093 (9th Cir. 1998).

In Larez, the Ninth Circuit upheld a jury finding of individual liability against the chief

---

[7]     Moreover, Plaintiff neither alleges nor presents evidence of unilateral action by an individual with policymaking authority as a basis for municipal liability under Monell.

of police when the evidence showed that he signed a letter denying a complaint for excessive force when the expert testimony showed that he should have disciplined his officers and established new procedures. 946 F.2d at 646. In Watkins, the court held that a jury could find that the chief of police ratified his subordinate's use of excessive force through dog bites because (1) the chief had dismissed a complaint of excessive force despite information to the contrary contained in the complaint; (2) the subordinate officer had been involved in other incidents of excessive force using dog bites; (3) the chief had failed to ascertain whether ameliorative action was necessary in terms of the use of dog bites; and (4) the chief failed to establish new procedures with respect to dog bites. 145 F.3d at 1093-94.   As set forth in Larez and Watkins, the Court must determine whether Captain Ahern acquiesced in or ratified the constitutional violations committed by his subordinates, i.e., that he knew or should have known about constitutional violations taking place under this command and failed to take appropriate supervisory actions in response.  Here, the facts, construed in the light most favorable to Plaintiffs, establish that approximately one week prior to the shooting of Jesus Manzo, another deputy may have used unreasonable deadly force against a Hispanic victim. Within a short period of time before that incident, two other shootings involving Hispanic suspects, whether or not they involved unreasonably force, had occurred under Captain Ahern's command.

Assuming that failure to take supervisory action given the circumstances set forth above would amount to culpable inaction, reckless or callous indifference, or acquiescence, Plaintiffs have not establish that Captain Ahern failed to take appropriate supervisory actions in response.  Plaintiffs submits evidence that Captain Ahern (1) failed to issue memos or bulletins to the deputies regarding the use of deadly force; (2) failed to recommend the use of tasers; and (3) failed to recommend additional training in the use of deadly force to the county.  Failure to take the above three actions however does not establish a failure to take <u>any</u> appropriate remedial action. Most noticeably, Plaintiffs have failed to argue or submit evidence to the effect that Captain Ahern failed to discipline Deputy Ritchie or any other deputy that was found to have used excessive force. Plaintiffs have therefore failed to raise

a dispute of fact as to whether Captain Ahern is culpable in his supervision fo the deputies under his command.  Furthermore, Plaintiffs offer no evidence that any of the alleged failures, by themselves or in combination, caused Officer Schott to use deadly force.

The Court acknowledges that a supervisor's failure to take certain specific actions to stop constitutional violations could evidence culpable inaction, indifference or acquiescence if it could be inferred that the supervisor chose ineffective or less stringent measures in response to constitutional violations -- e.g., where a supervisor chooses to issue a general memo rather than disciplining the specific offending officer.  Here, however, the evidence shows that Captain Ahern was not responsible for decisions regarding the use of tasers and training for deputies because these decisions were made at the county level. (Ahern Depo.at 37, 43; Ahern Decl. ¶ 5)  In fact, the testimony shows that other units were responsible for making such recommendations to the county. (Id.)  Although Plaintiffs have established that Captain Ahern would have been permitted to make  recommendations to this advisory unit, the Court cannot agree that the failure to issue unsolicited recommendations on county policy is an oversight from which one could infer culpable inaction or indifference to constitutional rights.  Moreover, as set forth above, the Court finds that Plaintiffs have submitted no evidence that Ahern's failures to issue the written recommendations and memoranda regarding the use of deadly force caused or set in motion the use of deadly force against Manzo.

In almost every instance where a person's constitutional rights are violated, a plaintiff will likely be able to point to things that could have been done to prevent the incident. City of Canton, Ohio v. Harris, 489 U.S. 378, 392 (1989).  However, without evidence of culpable inaction that caused or set in motion Schott's use of deadly force against Manzo, Plaintiffs cannot establish supervisory liability against Captain Ahern. Because there is no evidence to establish that Captain Ahern's failure to issue memos and written bulletins set in motion the constitutional violation against Manzo, the Court  GRANTS Defendants' motion for summary judgment on Plaintiffs' fifth cause of action for supervisory liability.

For the reasons set forth above, the Court GRANTS IN PART AND DENIES IN PART

1  Defendants' motion for summary judgment. The Court also orders the parties to show cause
2  why the claims brought by the estate of Manzo should not be dismissed for lack of standing.
3  The Court GRANTS the request to file under seal the two exhibits to the Notice of Lodgment
4  dated February 25, 2008.  The parties' objections to evidence are overruled to the extent
5  that the Court relied on them in reaching its decision.
6  IT IS SO ORDERED.
7  DATED:  August 15, 2008

_____
Honorable Barry Ted Moskowitz
United States District Judge